|   |   |
|---|---|
| 1 | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| AYAD JOSEPH DAWOOD, M.D., | CASE NO. 3:14-cv-05179-RBL |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | [DKT. #33] |
| MERCEDES-BENZ USA, LLC, a foreign corporation, | |
| Defendant. | |

THIS MATTER is before the Court on defendant Mercedes-Benz USA's Motion for Partial Summary Judgment [Dkt. #33]. This case arises from injuries plaintiff Ayad Dawood, a paraplegic physician, allegedly sustained when an overhead handle he used to enter and exit his leased Mercedes vehicle detached under load.

Dr. Dawood has been a wheelchair-dependent paraplegic since the early 1980s and since that time has driven with the use of assistive devices. In 2012, he leased a new Mercedes-Benz E350 station wagon and installed a set of hand controls he had used in his previous vehicle to operate the accelerator and brake pedals. To move between his wheelchair and the vehicle, Dawood employed a method that involved grasping a hinged interior handle located on the ceiling above the driver's door. He alleges that as he entered the vehicle on July 10, 2013, the

handle detached from its anchor points, causing him to fall between the vehicle and his wheelchair and injure his rotator cuff. He sues under the Washington Product Liability Act, chapter 7.72 RCW, asserting both manufacturing defect and failure to warn claims. First Amended Complaint, Dkt. #22.

Mercedes now moves for partial summary judgment on the failure to warn claim. Mercedes argues Dawood's use of the handle was unforeseeable and it therefore had no duty to warn as a matter of law. It also argues Dawood presents no evidence that the absence of a warning proximately caused his injuries. In its Reply,[1] Mercedes adds that federal law preempts Dawood's suggestion that it should have included a warning on the sun visor.

Dawood argues that his use was foreseeable, that an ordinary consumer would have expected to safely use the handle in a similar manner, and that he would have heeded an appropriate warning. Because Mercedes introduces its preemption argument in the Reply, Dawood has had no opportunity to respond.

# I. FACTUAL BACKGROUND

Dr. Dawood leased his vehicle sight-unseen and did not notify Mercedes or its dealer of his intent to use it with assistive devices. However, Mercedes acknowledges wheelchair-bound paraplegics are foreseeable users of its vehicles and offers a rebate program that partially offsets the cost of installing individual handicap modifications. Dawood did not utilize this program and instead installed the hand controls himself. It is unclear whether a Mercedes-assisted retrofit would have included any changes affecting ingress and egress.

Paraplegic drivers most commonly employ one of two major techniques to enter and exit

---

[1] Mercedes also moves to strike evidence Dawood supplied in his Response. Dkt. #40 at 8–9. The objections (irrelevance and no foundation) are overruled, and the motion is DENIED.

1  vehicles: transfer boards and the "popover" method. Drivers with transfer boards use them to
2  slide laterally between their wheelchairs and their vehicles, pushing themselves with their arms.
3  Others use the popover method, in which the driver pushes his or her body up, "pops" from one
4  seat to the other, and pulls his or her legs over once settled. These methods have different
5  advantages and disadvantages, and experts emphasize the importance of individualized solutions
6  for paraplegics with different types of vehicles and different needs. Mercedes notes these
7  methods both avoid hand-over-shoulder positions, which carry a higher risk of shoulder strain
8  and injury—an important concern for people who are dependent on their upper bodies for
9  mobility. It also notes that most medical literature suggests only the use of a transfer board.

10  Since 1983, Dr. Dawood has used a different and less common transfer method that
11  involves grasping the overhead handle, though the parties dispute the specifics. As Dawood
12  describes it, he first wheels as close to the vehicle as he can, at about 10 to 15 degrees to the car,
13  locks the wheels, and places his right foot in the vehicle's wheel well, leaving his left foot on the
14  ground outside for stability. He then grabs the overhead handle with his right hand and pushes up
15  with his left, dividing his weight evenly between the two arms, and moves laterally into the
16  driver's seat. As described, this method would require the handle to bear about 65–70 pounds of
17  downward force—half of Dawood's 135-pound body weight.

18  Mercedes disputes Dawood's description and casts his method as "repeatedly swinging
19  back and forth from the handle with his bottom swaying mid-air." Reply to Plaintiff's
20  Opposition, Dkt. #40 at 3. It bases this distinction on Dawood's deposition admission—on pages
21  of the transcript that are conspicuously absent from the excerpts before the court—that his
22  method involves some swinging:
23   Q. Okay. So you're describing you're swinging a little bit?
     A. Yes. Yes, exactly.
24

Dkt. #40 at 2.[2] Coupled with expert testimony that applying weight to exemplar handles alone has not resulted in breakage, Mercedes concludes only the repeated swinging it describes could have made the handle dislodge. Dawood asserts Mercedes mischaracterizes his transfer method.

## II. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

---

[2] Mercedes cites page 150 of vol. II of Dawood's deposition. The excerpts provided by Mercedes skip pages 149–159. Marks Decl., Dkt. #34, Ex. 2.

**B. Failure to Warn Claims Under the WPLA**

The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332 and therefore applies Washington State substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Dawood claims Mercedes is liable under the Washington Product Liability Act (WPLA), RCW 7.72, for failing to warn against using the overhead handle to assist entry and exit. Under the WPLA, failure to warn can render a product not reasonably safe, and a manufacturer is liable for harms proximately caused by such a product:

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe . . . because adequate warnings or instructions were not provided.

RCW 7.72.030(1). The WPLA preempts conflicting common law and governs all claims for product-related harm in Washington. *See Macias v. Saberhagen Holdings*, 175 Wash. 2d 402, 409, 282 P.3d 1069, 1073–74 (2012) (en banc).

1. <u>Strict Liability Standard</u>

Although the WPLA includes language about negligence, Washington courts have held it actually embraces a strict liability standard for failure to warn claims. For a failure to warn claim, "the test . . . is one of strict liability, not ordinary negligence, and so foreseeability is not an element." *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wash. 2d 747, 765, 818 P.2d 1337, 1346 (1992) (en banc); *see also Macias*, 175 Wash. 2d at 409–10, 282 P.3d at 1074 ("Strict liability principles apply to . . . failure to warn cases."). If a product is not reasonably safe without a warning or instruction, as a matter of law its manufacturer is strictly liable for harms proximately caused by that warning's absence. *See Ayers*, 117 Wash. 2d at 760–62, 818 P.2d at 1344–45. Thus, to prevail on a failure to warn claim, a claimant need only show (1) that by dint of failure to warn a product is not reasonably safe, and (2) that this unreasonably unsafe product

proximately caused the plaintiff's harms. RCW 7.72.030(1).

Unlike in a negligence claim, a tortfeasor's inability to foresee harm does not negate a duty to warn. *Ayers*, 117 Wash. 2d at 765, 818 P.2d at 1346. Mercedes and Dawood both argue about the foreseeability of Dawood's use and its effect on whether Mercedes had a duty to warn. But given that foreseeability is not an element of a failure to warn claim under the WPLA, these arguments appear to rely on a misreading of the law.[3]

2. Bases of Failure-to-Warn Liability

The WPLA embraces two independent tests for whether a product is not reasonably safe without warnings: a risk-utility test and a consumer expectation test. The risk-utility test requires a fact-finder to weigh the likelihood and seriousness of harm against the burden of warning:

> A product is not reasonably safe because adequate warnings or instructions were not provided . . . if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions . . . inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

RCW 7.72.030(1)(b); *see Ayers*, 117 Wash. 2d at 765, 818 P.2d at 1346 (Trier of fact must

---

[3] Mercedes relies on irrelevant precedent on the role of foreseeability in failure to warn claims: cases predating the WPLA, addressing common law claims against property owners, or addressing harms that occurred before the WPLA's enactment. *See, e.g.*, Dkt. #33 at 12 (quoting *Reed v. Pennwalt Corp.*, 22 Wash. App. 718, 591 P.2d 478 (1979) (case predating the WPLA's enactment)); Dkt. #33 at 10 n.30 (quoting *Tincani v. Inland Empire Zoological Soc'y*, 107 Wash. 2d 121, 875 P.2d 621 (1994) (common law negligence claim for slip-and-fall injury on defendant's property)); Dkt. #33 at 10 n.31 (citing *Simonetta v. Viad Corp.*, 165 Wash. 2d 341, 197 P.3d 127 (2008) (liability for torts committed before WPLA's enactment)).

Dawood, too, relies on off-point precedent about foreseeability. *See, e.g.*, Dkt. #35 at 6 (quoting *Iwai v. State*, 129 Wash. 2d 84, 915 P.2d 1089 (1996) (common law negligence claim for slip-and-fall injury on defendant's property)); Dkt. #35 at 6–7 (quoting *Wyler v. Holland America Line-USA*, 348 F.Supp.2d 1206 (2003) (common law negligence claim for injuries on cruise ship)).

It may be possible to argue that the WPLA's consumer expectation test (RCW 7.72.030(3), discussed *infra*) incorporates some variant of foreseeability. Mercedes might have suggested that a manufacturer can foresee all the reasonable ways consumers could use its products. Thus, it could argue, if a particular use is unforeseeable, by inference no ordinary consumer would expect the product to be safe for use in that manner, and such use is thus a misuse. Dawood might have argued the inverse: that if an ordinary consumer would expect a particular use to be safe, a manufacturer must have been able to foresee that it would be used that way. Neither party takes this path, and such arguments may well create false equivalencies. If the parties want to discuss foreseeability, however—and the pleadings would suggest they truly do—the Court sees no other way to make the discussion relevant.

balance "the likelihood that the product would cause the harm complained of, and the seriousness of that harm, against the burden on the manufacturer of providing an adequate warning or instruction.").

The consumer expectation test provides an alternate and independent basis for liability. *See Ayers*, 117 Wash. 2d at 765–66, 818 P.2d at 1346–47. This test requires a trier of fact to consider "whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer." RCW 7.72.030(3). An ordinary consumer's expectations about a product's safety are a jury question, but prior courts have concluded that Washington courts can instruct juries to take into account the class of persons expected to use a product in determining consumer expectations. *See Kirkland v. Emhart Glass S.A.*, 805 F.Supp.2d 1072, 1080 (W.D. Wash. 2011) (citing *Kerzman v. NCH Corp.*, 2007 WL 765202 at *4 (W.D. Wash. 2007)).

**C. Genuine Issues of Material Fact**

Mercedes fails to meet its demonstrative summary judgment burden. Genuine issues of material fact exist in regard to each essential element of Dawood's warnings claim.

1. Dawood's Transfer Method

The manner in which Dawood used the overhead handle is a genuine issue of material fact. Although Dawood admits to swinging "a little bit" [Dkt. #40 at 2], at summary judgment the Court must cast this evidence in as favorable a light as possible. *See Anderson*, 477 U.S. at 248–50. Here, that means accepting Dawood's version of his transfer method, which might necessarily involve some small amount of swinging as a person moves laterally between surfaces. Dawood's admission does not support Mercedes' characterization and is insufficient to convince the Court that any reasonable fact-finder would conclude he used the handle as a pivot point while he dangled from the ceiling. He may have swung from the handle, his elbow, or his

shoulder—or he may have simply used imprecise words. Reasonable jurors could disagree, and Mercedes has not met its initial burden to prove there is no triable issue of material fact. *See Celotex*, 317 U.S. at 322. Thus, in deciding this motion, the Court accepts as true the method Dawood and his experts describe and defend, which involves pulling down on the handle with approximately half of Dawood's body weight. Drawing all reasonable inferences in Dawood's favor, this use of the handle to assist ingress and egress is more likely to resemble the use others—including ambulatory drivers—might employ. The manner of Dawood's use is thus material to the question of consumer expectations.

2. Whether the Handle Was Not Reasonably Safe

Mercedes fails to show as a matter of law that the handle was not unreasonably unsafe without a warning. Whether an ordinary consumer would have contemplated using the overhead handle in the manner Dawood describes, without being warned otherwise, is a genuine issue of material fact.[4] Dawood argues ordinary consumers would expect the handle to safely assist entry and exit. Mercedes argues Dawood's use is unique, but given that the Court accepts as true Dawood's version of the transfer method, it is difficult to distinguish this use from how ambulatory drivers might use the handle.

The question is thus whether in the absence of a warning, an ordinary consumer would expect the handle to be safe for daily use to assist entry and exit. Dawood's human factors expert persuasively argues that an ordinary consumer would have this expectation:

> [A] handle located on the drivers' side would not foreseeably be used for anything but entering and exiting . . . [A] handle on the passenger side could also be used to hang items and provide stability while the vehicle is in motion; however, those uses would not be employed by the driver without compromising the drivers' vision and ability to control

---

[4] Although the risk-utility test and the consumer expectation test are independent means of showing a product is not reasonably safe, the parties only discuss consumer expectations here.

the vehicle (i.e. with only one hand on the steering wheel).

Gill Decl., Dkt. #37 at 11. Mercedes pays passing attention to ordinary consumers' expectations about whether the handle should be safe to assist entry and exit. It argues only that a normal consumer would not expect an overhead handle to safely assist ingress and egress because ambulatory adults of average height cannot see the handle from the outside of the vehicle. Dkt. #33 at 14–15. This argument ignores both Gill's reasoning and the existence of memory—which suggests that not all that is out of sight need be out of mind. As Dawood notes, "[o]nce seated in the driver's seat . . . the handle's presence is obvious to the user." Dkt. #35 at 13. For these reasons, Mercedes fails to convince the Court that in the absence of warnings, ordinary consumers would not expect the handle to safely assist entry and exit.

3. Causation

Mercedes argues Dawood has no evidence of causation. The WPLA requires a claimant to prove that a failure to warn or instruct proximately caused his injuries. RCW 7.72.030(1). Proving proximate cause requires showing both cause-in-fact and legal causation. *See Ayers*, 117 Wash. 2d at 753, 818 P.2d at 1340 (citing *Baughn v. Honda Motor Co.*, 107 Wash. 2d 127, 142, 727 P.2d 655 (1986)).

   a. *Cause-in-Fact*

In addition to noting Dawood's admission that he did not fully read the owner's manual, Mercedes points to a conclusory statement by Dawood's human factors expert that if a proper warning "had been effectively communicated to him, Dr. Dawood would have heeded the warning." Gill Decl., Dkt. #37 at 14. Dawood avers the same in his own declaration: "Had Mercedes provided a warning in the manner and location of the Air Bag warning decal on the drivers [sic] sun visor warning or instructing against use [sic] the grab handle to enter and exit

the subject vehicle, I would have heeded the warning and not used the grab handle to enter and exit the vehicle." Dawood Decl., Dkt. #38 at 2.

Based on the evidence before the Court, there is a genuine issue of material fact as to whether Mercedes' failure to warn Dawood was a cause-in-fact of his injuries. The Court must take as true Dawood's declaration that he would have heeded a warning. Mercedes may well argue that Dawood's failure to read the manual belies his self-serving claim, and in so arguing seek to undermine his credibility. But those are arguments for a fact-finder, not a court sitting in summary judgment. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. A jury must infer whether Dawood would have heeded the warning he alleges would have prevented his harms.

    *b. Legal Causation*

Washington courts consider legal causation in the context of both public policy considerations (such as justice and respecting precedent) and common sense in light of the facts of the case. "Legal causation depends on considerations of logic, common sense, justice, policy, and precedent . . . It involves the determination of whether liability *should* attach as a matter of law given the existence of cause in fact." *Ayers*, 117 Wash. 2d at 756, 818 P.3d at 1342 (internal quotations omitted) (emphasis in original). Here, the question of legal causation is bound up with questions of how Dawood used the overhead handle. The method Dawood maintains he used— which the Court accepts as true at summary judgment—is substantially similar to how other ordinary consumers might expect to use it. For this reason, the Court declines to hold at this stage that, if cause-in-fact is established, such use to assist entry and exit is so unlikely that the law should not impose liability.

**D. Sufficiency of Missing Warning**

Mercedes argues Dawood has not specified an adequate missing warning, rendering his claim insufficient as a matter of law. To establish that a product is not reasonably safe because adequate warnings or instructions were not provided, a claimant must specify the substance of the missing warning or instruction that would have prevented his or her harm. RCW 7.72.030(1)(b). For example, in a failure-to-warn suit arising from a child's aspiration of baby oil, the plaintiff's suggestion that the manufacturer should have provided a "warning about the dangers of aspirating baby oil" met this burden. *Ayers*, 117 Wash. 2d at 756, 818 P.2d at 1342. Supplying the substance of a warning does not require a plaintiff to specify exact words. *Id*.

Mercedes quotes from the deposition of Dawood's human factors expert, who admits after being pressed for specifics that she is "not prepared to design an effective warning system," and casts this as evidence Dawood has not specified the substance of the warning Mercedes should have provided. Dkt. #33 at 17. However, Dawood alleges Mercedes should have warned users: "Do Not Use Grab Handle To Assist Entry or Exit from Vehicle." Dkt. #35 at 10.

Dawood has met and exceeded his burden to specify the missing warning's substance. The WPLA requires only that a claimant specify the substance of a missing warning—not the exact wording. RCW 7.72.030(1)(b); *Ayers*, 117 Wash. 2d at 756, 818 P.2d at 1342. Even an allegation that Mercedes should have warned users against using the handle for ingress and egress would have been sufficient. Although Dawood also points to sun visor-mounted airbag warnings as examples of possible warning formats—a suggestion that raises federal preemption concerns discussed below—this does not negate the fact that he has specified the substance of the missing warning and need not determine the exact placement or wording of the same.

### E. Federal Preemption

Mercedes misreads the law when it alleges federal preemption of Dawood's warnings claim. In its Reply, Mercedes argues that modifying a sun visor warning as Dawood suggests would violate federal laws intended to avoid warnings overload. Dkt. #40 at 5. Mercedes cites persuasive precedent from the Eastern District of Washington and the Sixth Circuit, in which the courts held that Federal Motor Vehicle Safety Standard (FMVSS) 208, which mandates visor-mounted airbag warning labels with specific text, preempted plaintiffs' assertions that carmakers should have provided additional visor-mounted warnings about specific airbag risks. *Morris v. Mitsubishi Motors North America*, 782 F. Supp. 2d 1149, 1157–60 (E.D. Wash. 2011); *Fisher v. Ford Motor Co.*, 224 F.3d 570, 574 (6th Cir. 2000).

But key to the Eastern District's and the Sixth Circuit's reasoning in these cases was that the asserted missing warnings regarded *airbags*—the subject of the preempting rule—and thus conflicted with it. *Morris*, 782 F. Supp. 2d at 1159; *Fisher*, 224 F.3d at 574. These cases persuasively conclude that FMVSS 208 occupies the field when it comes to visor-mounted airbag warnings, though they decline to consider whether it also preempts airbag warnings placed elsewhere. *Id*. Were this case about airbag warnings, this analysis would be compelling.

However, the Court is unconvinced that FMVSS 208 preempts other failure to warn claims inside a car. FMVSS 208 addresses airbags specifically, and the National Traffic and Motor Vehicle Safety Act, which authorizes it, includes a savings clause: "Compliance with a motor vehicle safety standard . . . does not exempt a person from liability at common law." 49 U.S.C. § 30103(e). The presence of the savings clause requires a narrow approach to implied conflict preemption between state tort claims and federal motor vehicle safety standards, including FMVSS 208. *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 868 (2000). Moreover, the statute explicitly preempts only those state standards that are "applicable to the

*same* aspect of performance of a motor vehicle" as a conflicting federal standard. 49 U.S.C. § 30103(b)(1) (emphasis added). Given that FMVSS 208 only addresses airbag warnings, and in light of the narrow reading the Supreme Court gives the preemption clause, the Court finds no conflict between FMVSS 208 and Dawood's claim that Mercedes should have warned against using the overhead handle to assist entry and exit.

### III. CONCLUSION

Mercedes has failed to demonstrate in regard to any essential element of Dawood's warnings claim that there are undisputed material facts entitling it to judgment as a matter of law. It further fails to show that Dawood has insufficiently alleged the missing warning or that federal law preempts his claim. For these reasons, Mercedes-Benz USA's motion for partial summary judgment [Dkt. #33] is DENIED.

IT IS SO ORDERED.

Dated this 22nd day of July, 2016.

Ronald B. Leighton
United States District Judge